**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ABDIKARIM ADAN OMAR,** | § | |
| | § | |
| *Petitioner*, | § | |
| **v.** | § | |
| | § | |
| **MARY DE ANDA-YBARRA**, Field Office | § | |
| Director of Enforcement and Removal | § | |
| Operations, El Paso Field Office, | § | |
| Immigration and Customs Enforcement; | § | |
| **WARDEN** of ERO El Paso Camp East | § | **EP-26-CV-00267-DCG** |
| Montana; **TODD M. LYONS**, *in his official* | § | |
| *capacity* as Acting Director, Immigration and | § | |
| Customs Enforcement, U.S. Department of | § | |
| Homeland Security; **MARKWAYNE** | § | |
| **MULLIN**, *in his official capacity* as | § | |
| Secretary, U.S. Department of Homeland | § | |
| Security; and **TODD BLANCHE,** *in his* | § | |
| *official capacity* as Acting Attorney General | § | |
| of the United States; | § | |
| | § | |
| *Respondents*. | § | |

## <u>ORDER TEMPORARILY RESTRAINING RESPONDENTS</u>
## <u>FROM REMOVING PETITIONER</u>

Petitioner Abdikarim Adan Omar moved for a temporary restraining order ("TRO")[1]

barring "Respondents from removing Petitioner from the United States."[2] According to

Petitioner, Respondents plan to imminently remove him to Cameroon but haven't provided him

with an opportunity to seek withholding of removal under 8 U.S.C. § 1231(b)(3) or the

---

[1] *See generally* Mot. TRO, ECF No. 10; *see also* Mem. ISO Mot. TRO, ECF No. 11.

[2] *See* Mot. TRO at 2–3.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF
system, rather than the cited document's internal pagination.

Convention Against Torture ("CAT").[3] Petitioner argues that—unless the Government provides him an opportunity to seek withholding of removal—his removal to Cameroon would be unlawful.[4]

Although the Court would prefer to hold a hearing before ruling on an issue like this, swifter action is necessary here. Petitioner's counsel has informed the Court that Petitioner was recently transferred from Camp East Montana in El Paso, Texas to Port Isabel in Brownsville, Texas.[5] According to Petitioner's counsel, such a "relocation across Texas is not typical unless removal is imminent."[6] The Court has therefore reviewed Petitioner's Motion, supporting Memorandum, and legal authorities on an expedited basis. For the reasons explained below, the Court will temporarily restrain Respondents from removing Petitioner from the United States while the Court considers whether further injunctive relief is appropriate.

---

[3] *See* Mem. ISO Mot. TRO at 2–5.

Though Respondents haven't yet responded, the Government's filings in another case lend credibility to Petitioner's assertion. *See* Federal Respondents' Response to Motion for Temporary Restraining at 2, *Zawu Roberts v. de Anda-Ybarra*, No. 3:26-CV-00377 (W.D. Tex. Apr. 23, 2026), ECF No. 13 ("Petitioner will not have an opportunity to seek withholding of removal . . . .").

[4] *See generally* Mem. ISO Mot. TRO.

[5] *See* Mot. TRO at 2.

[6] *Id*. at 3.

## I.    Discussion

### A.    Jurisdiction

The Court has already determined that it has jurisdiction to consider requests like Petitioner makes here.[7] Rather than reproduce that analysis here, the Court directs the parties to the jurisdictional discussion in its "Order Preliminarily Enjoining Respondents from Removing Petitioner Pending Withholding of Removal Determination" in *Zawu Roberts v. de Anda-Ybarra*, No. 3:26-CV-00377 (W.D. Tex. May 22, 2026), ECF No. 18.

### B.    Temporary Restraining Order

Having determined that it retains jurisdiction, the Court now turns to Petitioner's request for a TRO. Under Federal Rule of Civil Procedure 65, a TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief, which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction."[8] "The purpose of a TRO is to preserve the status quo and prevent irreparable harm until the court makes a final decision on injunctive relief."[9]

To prevail, the movant must prove that:

(1)    they are likely to succeed on the merits;

(2)    they are likely to suffer irreparable harm in the absence of preliminary relief;

---

[7] *See* Order Preliminarily Enjoining Respondents from Removing Petitioner Pending Withholding of Removal Determination at 6–12, *Zawu Roberts v. de Anda-Ybarra*, No. 3:26-CV-00377 (W.D. Tex. May 22, 2026), ECF No. 18.

[8] *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) (citation modified); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (establishing elements for obtaining a preliminary injunction).

[9] *Mahdejian v. Bradford*, No. 9:25-CV-00191, 2025 WL 2269796, at *2 (E.D. Tex. July 3, 2025) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974)).

(3)     the balance of equities tips in their favor, and

(4)     that a TRO is in the public interest.[10]

Temporary restraining orders are "extraordinary relief and rarely issued."[11] In those rare cases, "every restraining order must state the reasons why it issued; state its terms specifically; and describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."[12]

### 1.     Likelihood of Success

The Court begins with the first TRO prong, which requires Petitioner to demonstrate a likelihood of success on the merits. Preliminarily, there is at least some question as to what "the merits" are for the purposes of this Motion. In other (non-habeas) contexts, courts have determined that "[t]he relevant inquiry of whether [a litigant has] shown a likelihood of success on the merits is whether they are likely to prevail on the causes of action they assert *in their complaint*."[13] Because this is a habeas action, the ultimate relief that Petitioner seeks is his release from custody.[14] Thus, to prevail on the Motion under the typical TRO framework, Petitioner would have to show a likelihood that the Court will grant his release.

---

[10] *See Winter*, 555 U.S. at 20.

[11] *E.g.*, *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999).

[12] FED. R. CIV. P. 65(d)(1).

[13] *See Bermudez v. SN Servicing Corp.*, No. 2:22-CV-01246-KJM-DB, 2022 WL 4280168, at *2 (E.D. Cal. Sept. 15, 2022) (emphasis added); *see also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (determining that "new assertions of mistreatment that are entirely different from the claim raised and the relief requested" in a complaint "cannot provide the basis for a preliminary injunction" (citing *Stewart v. I.N.S.,* 762 F.2d 193, 198–99 (2d Cir. 1985)).

[14] *See generally* Pet., ECF No. 1.

Habeas cases, however, appear to present an exception to the typical TRO framework. Under similar circumstances—in other words, where the lawfulness of an alien's removal is at issue—courts have determined that aliens may satisfy the "likelihood of success" prong by showing that removal would be or was unlawful.[15] In *Abrego Garcia v. Noem*, for example, the district court's "likelihood of success" analysis focused on whether the Government had wrongfully removed an alien (rather than whether the Government had wrongfully detained that alien).[16] After determining that the alien was likely to succeed in arguing that the Government wrongfully removed him, the district court ordered the Government to facilitate his return.[17] The Supreme Court upheld that order, concluding that the district court had "properly require[d] the Government to 'facilitate' [the alien's] release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador."[18]

In light of *Abrego Garcia*, this Court concludes that Petitioner's "likelihood of success" for the purposes of the Motion hinges on whether he is likely to succeed in arguing that his removal would be unlawful under the circumstances. The Court finds that he is likely to succeed on such an argument.

---

[15] *See, e.g.*, *Abrego Garcia v. Noem*, 777 F. Supp. 3d at 516–17.

[16] *See id.*

[17] *See id.* at 519.

[18] *See Noem v. Abrego Garcia*, 145 S. Ct. at 1018.

Aliens are entitled to an opportunity to seek withholding under 8 U.S.C. § 1231(b)(3) and CAT[19]—both of which require the Government to make "individualized determinations."[20] For example, to obtain withholding of removal under § 1231(b)(3), an alien must "establish that it is more likely than not that *he or she* would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to that country."[21] Similarly, to obtain CAT protection, an alien must "establish that it is more likely than not that *he or she* would be tortured if removed to the proposed country of removal"[22] considering "all evidence relevant to the possibility of future torture."[23] Without undertaking those "individualized determinations," the Government is unable to discharge its obligations under 8 U.S.C. § 1231(b)(3) and CAT.

For these reasons, the Court finds that Petitioner is likely to succeed in arguing that the Government may not lawfully remove him to Cameroon without first providing him with an

---

[19] *See, e.g.*, *Thanga v. Gonzales*, 162 F. App'x 295, 298 (5th Cir. 2006) ("An alien may apply for withholding of removal under [8 U.S.C. § 1231(b)(3)]."); *Zhu v. Gonzales*, 493 F.3d 588, 596 (5th Cir. 2007) (explaining that "withholding of removal is not discretionary"); *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002) (explaining that aliens are "entitled to a reasonably fair opportunity to apply for . . . Convention Against Torture protection." (citing *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382 (10th Cir. 1981)).

*See also* 8 C.F.R. § 208.16 ("Withholding of removal under [8 U.S.C. § 1231(b)(3)] and withholding of removal under the Convention Against Torture.").

[20] *See Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) (characterizing whether to grant withholding of removal under 8 U.S.C. § 1231(b)(3) and CAT (among other things) as "individualized determinations").

[21] 8 C.F.R. § 208.16(b)(2) (emphasis added).

[22] *Id.* § 208.16(c)(2) (emphasis added).

[23] *Id.* § 208.16(c)(3) ("*[A]ll evidence* relevant to the possibility of future torture *shall be considered* . . . ." (emphases added)).

opportunity to seek withholding of removal under 8 U.S.C. § 1231(b)(3) and CAT. The first *Winter* factor therefore tips in Petitioner's favor.

### 2.    Substantial Threat of Irreparable Harm

The Court next considers whether Petitioner has shown a substantial threat of irreparable harm. "An injury is 'irreparable' only if it cannot be undone through monetary remedies."[24]

As explained above, Petitioner desires an opportunity to seek withholding of removal to Cameroon under 8 U.S.C. § 1231(b)(3) and CAT.[25] The purpose of those processes is to prevent the Government from removing aliens to countries where it is more likely than not that they will be "persecuted or tortured." For that reason, the threat of irreparable harm in this case "is clear and simple: persecution, torture, and death."[26] The Court finds that monetary remedies would be inadequate to "undo" these types of harm.[27]

The second *Winter* factor therefore also tips in Petitioner's favor.

---

[24] *OCA Greater Houston v. Texas*, No. 1:15-CV-679-RP, 2016 WL 4597636, at *4 (W.D. Tex. Sept. 2, 2016) (citing *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)).

[25] *See generally* Mot. TRO.

[26] *Mahdejian*, 2025 WL 2269796, at *4 (citing cases); *see also Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury.").

[27] *See, e.g., Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 759 F. Supp. 1339, 1352 (W.D. Wis. 1991) (concluding that "assaults, batteries[,] and harassment" "cannot be remedied by monetary damages").

### 3.       Balance of Hardships and Public Interest

Finally, the third and fourth factors "merge when the Government is the opposing party,"[28] as is true here. Concerning the balance of equities, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"[29] As to the public interest, the Court "should pay particular regard for the public consequences in employing the extraordinary remedy of [a TRO]."[30] "Of course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm."[31] Conversely, "[t]here is always a public interest in prompt execution of removal orders." [32]

Here, Petitioner is in a particularly vulnerable position of being subject to removal to a country where he hasn't been given an opportunity to seek withholding of removal.[33] Moreover, while the Court acknowledges the "public interest in prompt execution of removal orders," that doesn't mean the Government can neglect its obligations under 8 U.S.C. § 1231(b)(3) or CAT when removing aliens. Indeed, the public interest in allowing Petitioner to seek withholding

---

[28] *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 643 (5th Cir. 2023) (applying the same "merging" rule in the preliminary injunction context).

[29] *Winter*, 555 U.S. at 24.

[30] *Id.*

[31] *Nken*, 556 U.S. at 436.

[32] *Id.*

[33] *See generally* Mot. TRO.

protection outweighs what little legitimate interest the Government has (if any) in sidestepping its humanitarian obligations.[34]

The equities and public interest factors therefore tip in Petitioner's favor as well.

*****

Having carefully considered each *Winter* factor, the Court finds that Petitioner has made a sufficient showing to justify temporarily preserving the status quo while the Court considers whether a preliminary injunction is appropriate.[35] The Court will therefore order Respondents to temporarily refrain from removing Petitioner (as detailed below).[36]

In the meantime, the Court will order Respondents to file a brief in response to the Motion.[37] Depending on Respondents' brief, the Court may either rule on the papers or set an in-person hearing to further flesh out the issues.

## II.   Conclusion

For the reasons stated above, the Court **GRANTS** Petitioner's "Emergency Motion for Temporary Restraining Order" (ECF No. 10) **IN PART** to the extent it seeks a temporary restraining order prohibiting Respondents from removing Petitioner from the United States.

The Court thereby **TEMPORARILY RESTRAINS** Respondents from removing Petitioner from the United States until (1) **Monday, June 1, 2026 at 11:59 P.M. Mountain Time**; *or* (2) the Court orders otherwise.

---

[34] *See Sagastizado*, 802 F. Supp. 3d at 1016; *see also State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (stating that there is "generally no public interest in the perpetuation of unlawful agency action").

[35] *See Granny Goose*, 415 U.S. at 439.

[36] *See infra* Section II.

[37] *See infra* Section II.

The Court **DENIES** the "Emergency Motion for Temporary Restraining Order" (ECF No. 10) **IN ALL OTHER RESPECTS**.

The Court further **ORDERS** that by **Thursday, May 28, 2026**, Respondents must **FILE** a **BRIEF**:

(1)    responding to the factual allegations and legal arguments that Petitioner made in his Motion and supporting Memorandum; and

(2)    indicating whether Respondents' positions are foreclosed by this Court's "Order Preliminarily Enjoining Respondents from Removing Petitioner Pending Withholding of Removal Determination" in *Zawu Roberts v. de Anda-Ybarra*, No. 3:26-CV-00377 (W.D. Tex. May 22, 2026), ECF No. 18.

The Court **ORDERS** Respondents to transmit this Order to all relevant officers, agents, and employees under their control and with responsibility in this matter.

Finally, the Clerk **SHALL** serve copies of this Order on all named Respondents.

**So ORDERED and SIGNED this 22nd day of May 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

- 10 -